THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JUAN ERAZO, Appellant.— Order entered May 17, 1967, herein appealed from, affirmed. Defendant-appellant (defendant), by this motion in the nature of a petition, sought to vacate a judgment of conviction rendered March 12, 1962, convicting him upon his plea of guilty of the crime of robbery in the third degree. At the hearing and on this appeal defendant asserts he was legally insane at the time he entered the plea on July 13, 1960. The Bellevue Hospital report of September 30, 1960, stated defendant at that time was legally insane. From October 11, 1960 to February 15, 1962, defendant was committed to Matteawan. The diagnosis at Matteawan was " psychosis with psychopathic features personality, with episodes of emotional instability and malingering features." The earlier diagnosis at Bellevue on September 7, 1960 was schizophrenic reaction, and a later diagnosis on February 20, 1962, after defendant's return from Matteawan was " schizophrenic reaction residual." Interestingly enough the Matteawan report, according to the minutes, states that defendant showed no evidence of schizophrenia while at that institution. Defendant apparently is or was at the time a drug addict and heavily addicted to alcohol. There was testimony, evidently based upon such report, that defendant's " psycopathic episode appears to be in the nature of emotional instability with a desire to escape punishment for his crime." Long-term observation at Matteawan indicated there were no schizophrenic episodes and defendant was not a management problem. According to Dr. Abrams the Matteawan records carried no indication of the kind of symptomatology where defendant might not know what was going on. Certainly both the Bellevue and Matteawan records reveal that there was no impairment of memory as to the commission of the crime charged. Defendant in late 1952 and early 1953 was committed to the Psychiatric Institute in Puerto Rico. A portion of the report from that institution, dated April 25, 1953, stated defendant " is conscious of what he has done and knows it is bad, but that he does it to keep in good with his friends." Similarly in May, 1953, when defendant appeared at a staff meeting of the Institute he was found to be well oriented and without hallucination. At the time that defendant appeared before the staff meeting of the Psychiatric Hospital on January 4, 1959, following upon an earlier departure in 1958 without permission, it was noted that defendant spoke " coherently with normal voice", and there was a reason stated why defendant did not wish to be confined to prison. Dr. O'Malley, who voiced the opinion that defendant was legally insane at the time of the plea, saw the defendant on one occasion only, November 4, 1966. The record does not support the observation contained in the dissenting opinion that the psychiatrist called by the People is one " who frequently testifies as an expert witness." Be that as it may, expert opinion evidence, as here received, is received on the basis of necessity. Reasoning from the known facts as contained in hospital records, conflictng inferences were drawn and opinions expressed as to defendant's sanity some six or seven years earlier. The court was not bound to accept a stated opinion to the disregard, total or in part, of other evidence before it.

Expert opinion testimony is merely for the assistance and guidance of the trier of the facts. The dissent, *sua sponte*, objects that the judgment should not stand because the Court of Appeals has mandated trial of the issue of defendant's sanity before a Judge other than the one before whom the guilty plea was entered. In the cited case (*People* v. *Hudson,* 19 N Y 2d 137) there was a full trial by jury and a verdict rendered convicting defendant of the crime of murder in the first degree. Defendant's plea to the indictment was not guilty by reason of insanity. Unquestionably there was opportunity for extended observation of defendant by the trial court and others. On appeal the case was remanded for " adversary inquiry and determination of the mental capacity of defendant at the time of trial " (p. 139). The court noted that on such issue " the testimony of the Trial Judge as to his observations and his acquaintance with the assertions by trial counsel of difficulty in communication may become germane " and it was preferable to send the inquiry to another Judge. Here the observation of the judge before whom the plea was entered was at most minimal and from this record it is extremely doubtful that any testimony by him would be required (but see, *People* v. *Hines,* 28 A D 2d 909). Viewing the evidence in its entirety, including the responses of defendant at the time the plea was entered, defendant has failed to sustain the burden imposed by law upon him, and the order appealed from is affirmed. No special circumstances have been shown permitting the question to be raised in the Appellate Division for the first time. (See *People* v. *Fino,* 24 N Y 2d 1020, 1021.) Concur — Stevens, P. J., Eager, McGivern and McNally, JJ.; Nunez, J., dissents in the following memorandum: On July 13, 1960 defendant pled guilty to robbery, third degree before Justice McCaffery. On September 7, 1960, the date set for sentence, he was committed to Bellevue Hospital for psychiatric examination. In its report of September 30, 1960 Bellevue found the defendant legally insane. On October 11, 1960, the same Justice confirmed the report and committed Erazo to Matteawan State Hospital. On February 15, 1962 Matteawan's Superintendent certified that defendant was no longer in such a state of insanity as to be incapable of understanding the charge against him and of making his defense thereto. Bellevue, by report dated March 12, 1962, diagnosed him legally sane. He was sentenced to serve a term of 4 to 10 years in State Prison on March 22, 1962. Beginning November 3, 1962, defendant made several applications to withdraw his guilty plea and to vacate the conviction on the ground that at the time of the entry of his plea and prior thereto he was insane and incapable of defending himself. His first motion was denied with leave to renew. After a hearing upon the renewed motion and before decision thereon, defendant withdrew it. In October, 1965 defendant renewed his motion *pro se.* Legal aid was assigned. After protracted hearings commencing March 24, 1966 and ending February 27, 1967, the same Justice before whom the plea had been entered and who had imposed sentence, on May 17, 1967, found that " defendant has failed to sustain the burden imposed upon him by law of overcoming the presumption of the regularity of the proceedings had against him in this court " and denied the motion. It should be noted that, of course, by now defendant has served his sentence. The evidence of defendant's incompetence at the time of plea was overwhelming. At age 13 he had been a patient in a mental institution in Puerto Rico. He was last confined therein from March 7, 1957 to March 31, 1958, when he left without permission. His illness was diagnosed as " schizophrenic reaction, chronic, catatonic type." Dr. Leonard Abrams of the Bellevue Hospital staff testified that he had examined defendant when last committed by the court. He also reviewed all available records and explained the meaning of various medical terms and diagnosis. He, in effect, refused to state his opinion concerning defendant's state of mind on July 13, 1960, stating

that this was not his function or part of his duties as a Bellevue doctor. However, he testified that if a psychiatrist were presently asked a hypothetical question concerning defendant's state of mind on July 13, 1960, he would be able to come to a conclusion which would be of benefit to the court. Following Dr. Abrams' testimony the court designated Dr. Edward O'Malley to examine all available records and the defendant and to give his opinion as to defendant's mental state on July 13, 1960. Dr. O'Malley's answer to the hypothetical question was: "It is my opinion that the defendant in 1960 did not understand the nature of the charges against him, was not capable of making a defense. This was based on reviewing the previous records of the individual in terms of the past history in Puerto Rico, in terms of the events that occurred at the time he was in Bellevue, the statements that were made by psychiatrists in Bellevue shortly after he was incarcerated regarding his ability of understanding with the defendant. All these factors lead me to the opinion that the defendant did not understand the nature of the proceedings or what the charge was or what the plea of guilty meant to him." Faced with uncontradicted and convincing if not conclusive evidence of defendant's incompetence, including the *impartial opinion of the court appointed* Dr. O'Malley, the People called a psychiatrist who frequently testifies as an expert witness. But he did not testify that Erazo was competent. The only contribution he made was to state (in direct contradiction to Dr. Abrams and Dr. O'Malley) that neither he nor any other psychiatrist could form an exact opinion as to defendant's mental condition at the relevant time at this late date. Simple logic compels a finding of incompetence. Erazo had a history of chronic mental illness and confinement prior to July 13, 1960. A few weeks thereafter he was found incompetent by Bellevue, followed by commitment to Matteawan for a period of two years. His plea was invalid and therefore it and the judgment entered thereon should be vacated. (See *Pate* v. *Robinson*, 383 U. S. 375 [1966].) Though not raised by appellant, the judgment cannot stand for still another reason. The Court of Appeals has clearly mandated that the issue of defendant's sanity must be tried by a judge other than the one before whom the plea was entered. See *People* v. *Hudson* (19 N Y 2d 137, 140 [Feb. 21, 1967]). In the case at bar, the plea was taken by Justice McCAFFERY who also conducted all the subsequent hearings and determined defendant's mental capacity at the time of plea. In *Hudson,* the court said: "On this issue [defendant's mental capacity at the time of trial] the testimony of the Trial Judge as to his observations and his acquaintance with the assertions by trial counsel of difficulty in communication may become germane, and since this should not be left solely to the memory and the subjective processes of the Trial Judge, as it would be if he were himself to try the issue, it seems preferable to send the inquiry to another Judge of the court.* * * Thus, in conformity with the court's practice under *Huntley* (*People* v. *Huntley,* 15 N Y 2d 72), the case should be remanded to the trial court, but before another Judge, for a determination of defendant's mental capacity at the time of trial". The Appellate Division, Second Department in *People* v. *Hines* (28 A D 2d 909 [July, 1967]) said: "Where the issue of sanity at the time of pleading and sentence is raised, however, it is preferable to hold the hearing before a Judge other than the one who accepted the plea and sentenced the defendant (*People* v. *Hudson,* 19 N Y 2d 137, 140)." In November 1968 the Appellate Division, Second Department, in *People* v. *Frampton* (31 A D 2d 551) said: "In our opinion, defendant's commitment to Dannemora State Hospital six weeks after sentencing raises a question as to his sanity not only at the time of sentencing but also at the time of trial 10 weeks prior to the commitment (*People* v. *Bangert,* 22 N Y 2d 799; *People* v. *Haynes,* 30 A D 2d 705; *People* v. *Blando,* 29 A D 2d 689; *People* v. *Moore,* 21 A D 2d 860). The

hearing mandated herein should be held before a Judge other than the one who presided at the trial and with due regard for defendant's full constitutional rights (*People* v. *Hudson,* 19 N Y 2d 137; *People* v. *Jenkins,* 29 A D 2d 681)." For the foregoing reasons appellant's guilty plea of July 13, 1960 should be vacated and the judgment entered thereon reversed.